No. 14505

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

TERRY BALDWIN,

                   Plaintiff and Appellant,

      -vs-

ALAN STUBER,

                 Defendant and Respondent.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Cameron Ferguson, Great Falls, Montana

    For Respondent:

        Thomas Baiz, Great Falls, Montana

---

Submitted on briefs: February 9, 1979

Decided: JUN 29 1979

Filed: JUN 29 1979

*Thomas J. Kearney*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by plaintiff from a judgment of the District Court of Cascade County, sitting without a jury, in an action for breach of contract.

Plaintiff was the operator of the "Natural Look Barber Salon" in premises leased from the European Health Spa in Great Falls, Montana. From March, 1974 to March, 1976, plaintiff rented the premises on a month-to-month tenancy, and from March, 1976 to February 28, 1977, held the premises under a one year lease.

Sometime in 1975, plaintiff's business had reached the point where he could not handle it alone. He approached defendant about working with him and defendant thereafter began operating a booth in the shop. Defendant was an independent contractor paying plaintiff a weekly rental.

In late 1976 or early 1977, plaintiff was considering opening a second barber shop on the other side of town. His original intention was that he would own both shops, but later he conceived the idea of running only the second shop and selling the shop in the Spa to defendant. The parties discussed that possibility and defendant at least once contacted a local bank to inquire about financing.

When plaintiff's lease expired on February 28, 1977, he did not renew it but rather returned to paying rent by the month. Plaintiff saw no need to renew the lease in view of his anticipated sale of the business.

On March 8, 1977, as a result of the discussion of the proposed sale between the parties, a "Selling Agreement" prepared by plaintiff was executed by him and defendant. It provides, verbatim, as follows:

> "On this date 3-8-77, I, Terry L. Baldwin, here-to-fore known as sellor, and Alan D. Stuber,

here-to-fore known as sellee, enter into a selling agreement, which is here-to-fore known as The Natural Look Barber Salon, located in the European Health Spa at 2500 6th Ave. So., Great Falls, MT.

"The sellor agrees to sell said shop for set amount agreed to by the sellor and sellee of $7,000.00. The sellee agrees to make payment in full at the time of signing of the lease and acquiring money from The Northwestern Bank of Great Falls, Montana to sellor, or sellors wife, Myra D. Baldwin, or Dee L. Bullard with the right of receivership. The sellee understands that a lease between European Health Spa and sellee would be null and void without payment to sellor of said $7,000.00. The sellor agrees to these selling conditions:

"1. To leave all permanent fixtures and furniture, (Coke Machine and antiques are excluded.)

"2. The Shop name of The Natural Look is to remain with sellor.)

"The sellee agrees to these selling conditions:

"1. To operate under his own name whichever he sees fit other than The Natural Look.

"2. Sellee agrees to pay full monthly payment on shops Yellow Page ad. (February 77 to February 78.) This is contingent on maintaining original phone number. (Sellor will apply for new number.)

"3. Sellee agrees to gainfully employ sellor until such time as sellor can be gainfully employed in a new location."

In late June, 1977, plaintiff notified his lessor that he intended to terminate his rental arrangement as of July 1, 1977, contingent upon receipt from defendant of the $7,000 payment for the sale of the business. The notice said that if the sale did not materialize, "this letter of termination of rental agreement is void." At the time of mailing the notice, plaintiff was no longer under a lease, but was merely a month-to-month tenant.

On July 1, 1977, defendant, without plaintiff's knowledge or consent, entered into a five year lease of the Spa location with the lessor. On July 5, when plaintiff approached defendant about consummating the sale, defendant informed him that he had decided to remodel, did not want to purchase the furniture and improvements plaintiff had installed in the shop, and had secured

a new lease from the lessor. Plaintiff then went directly to the shop, removed all of the furniture and fixtures belonging to him, and disconnected the phone. Plaintiff did his barbering in his home until September 1977 when he found another location.

On October 11, 1977, plaintiff filed a complaint against defendant in Cascade County District Court alleging breach of the "Selling Agreement". The prayer for relief requested judgment in the sum of $7,000 or, alternatively rescission of the "Selling Agreement"; a court order requiring defendant to transfer to plaintiff his interest under the new lease, and $2,000 in general damages. Defendant's answer alleged that plaintiff had made false and fraudulent representations to induce him to enter into the "Selling Agreement" and that the agreement was therefore null and void.

Trial was had without a jury on May 15, 1978. Plaintiff's theory at trial was that even though he had removed his furnishings and fixtures and taken his phone number, defendant still owed him compensation for goodwill and the value of the leasehold. Plaintiff sought to testify that the parties understood that the sale contemplated those items, but since the "Selling Agreement" did not refer to them, defendant's objections under the parol evidence rule were sustained.

Defendant, on the other hand, was asked what plaintiff told him he was selling to him. When plaintiff's counsel objected under the parol evidence rule, the court overruled the objection, stating "I would like to hear this testimony." Defendant testified that plaintiff indicated he was selling all the equipment, permanent fixtures and everything that belonged in the shop, excluding his antiques, but had not told him that approximately a third of the fixtures and equipment belonged to the Spa rather than to plaintiff. Defendant further testified that when he entered

into the "Selling Agreement" on March 8, 1977, he thought plaintiff still had a lease in effect. On cross-examination, defendant testified he did not recall any mention of goodwill as being part of the sale. The court asked defendant what he received under the "Selling Agreement." Defendant stated that he had received nothing. None of the things mentioned in the "Selling Agreement", except the items belonging to the Spa, are now or ever were in defendant's possession.

Findings of fact and conclusions of law were entered by the District Court on June 19, 1978. The pertinent findings and conclusions for purposes of this appeal are, in summary:

(a) That plaintiff never informed defendant prior to execution of the "Selling Agreement" that some of the fixtures and equipment in the shop were not contemplated in the sale or that his lease had expired, so that there was no valid contract because defendant had not been properly apprised of what he was receiving and there was therefore no meeting of the minds.

(b) That since there was no mention of goodwill in the "Selling Agreement," plaintiff was barred from any compensation for it because a contract extends only to those things concerning which it appears that the parties intended to contract; further, that in this case, even if goodwill had been mentioned in the contract, plaintiff was not entitled to recover anything for it because he had retained the name and phone number of the shop and had begun operating a competing business in the same city, so that no goodwill had passed to defendant.

(c) That defendant had received nothing which belonged to plaintiff or which plaintiff had agreed to sell in the "Selling Agreement," and that plaintiff should recover nothing.

On appeal, plaintiff contends that the District Court erred in finding that defendant received no goodwill. He argues that a primary element of goodwill is the location of the business,

which defendant received without paying compensation to plaintiff. Further, plaintiff contends, goodwill can pass by implication whether specifically mentioned in a contract or not, so that it was error to conclude there was no sale of goodwill here merely because goodwill was not itemized in the "Selling Agreement." While plaintiff raises several other matters in his brief, it is clear from his prayer for relief on appeal that noncompensation for goodwill is the central issue before us. Plaintiff requests that we "reverse the trial court and direct entry of judgment in favor of seller for $4,000" (the figure plaintiff submits as a reasonable allocation to goodwill out of the $7,000 contract price for the transfer of the business), or, alternatively, that we "reverse the trial court and remand for establishment of values for the property that passed to Buyer for which seller is due."

Plaintiff's contention that location is a primary element of goodwill is correct. "All definitions of goodwill incorporate as one of the chief elements thereof the advantage accruing to a vendee from the old business stand, and it is particularly important in the case of a trade or business of a commercial character." 38 Am Jur 2d Good Will §5. Defendant argues that a barber business is not of a commercial character, but is rather a professional or quasi-professional enterprise depending on public confidence in a particular person and that no element of goodwill inheres in such a business. While defendant's position is not without support, " . . . this view seems traceable to the early, narrow definition of good will. There is authority that good will may also exist in a professional practice or in a business founded on personal skill or reputation." 38 Am Jur 2d Good Will §8.

Plaintiff's contention that goodwill can pass by implication on the transfer of a business, even though not mentioned in a written contract of sale, is also correct. While there are some

- 6 -

decisions that refuse to find an implied sale of goodwill, the majority rule is that if goodwill is not expressly reserved or excepted, it passes automatically to the purchaser of a business, regardless of whether the seller has or has not entered into an express covenant not to compete. 38 Am Jur 2d Good Will §10; Annot. 65 ALR2d 502.

At trial, defendant testified that thirty to forty percent of his present customers are the same people who used to frequent the shop when plaintiff operated it. The District Court's findings, which are otherwise thorough and complete, do not mention this fact. In our view, this testimony is significant because it gives rise to the implication that it was the location of the shop rather than any personal qualities of either plaintiff or defendant that attracted these customers. It appears, therefore, that plaintiff has in fact lost a valuable asset without being compensated. We hold that the District Court erred in its ruling that no goodwill passed to defendant. Having so determined, we now turn to the problem of plaintiff's remedy.

Plaintiff's complaint was pleaded strictly on the basis of breach of an express contract. However, plaintiff argued at trial and on his motion to amend the findings and conclusions an estoppel-based unjust enrichment, viz. that because defendant had reaped a benefit from the transaction, he could not deny the validity or binding effect on him of the "Selling Agreement."

As a general rule, recovery cannot be had in quantum meruit under a complaint alleging an express contract. "When an express contract is alleged it must be proved. Failure to do so is not merely a variance but it is rather a failure of proof, and recovery cannot be had on proof of an implied contract." Puetz v. Carlson (1961), 139 Mont. 373, 382, 364 P.2d 742, 747. However, "[T]he fact that an express or special contract was pleaded does not prevent a recovery on an implied contract or on quantum

- 7 -

meruit where such express or special contract is void, or where a contract never came into existence." 17A C.J.S. Contracts §569. Recovery in quasi contract has been granted where the evidence showed that there was no contract because of misunderstanding. See 1 Palmer, Law of Restitution §4.1 368 (1978). Further, the rule barring recovery on proof of an implied contract or quantum meruit in an action brought on an express or special contract is inapplicable where " . . . the record shows an unusual and equitable reason for such recovery and the particular situation seems to justify it." 17A C.J.S. Contracts §569.

Among the conclusions of law entered by the District Court was that a meeting of the minds is required in order to make a valid contract and that there was no meeting of the minds in this case " . . . because defendant had not been properly apprised of what he was receiving from the plaintiff, and defendant was not aware that plaintiff's lease had expired." The same C.J.S. Contracts section twice referred to above also provides that the setting aside of a contract for fraud in its procurement " . . . does not remove the case from the application of the rule denying recovery on implied contract or quantum meruit where an express contract is pleaded." The District Court made no finding of fraud, so defendant cannot complain that this rule is violated by granting plaintiff relief. The District Court's conclusion was merely that the contract was not valid. Therefore, this case comes within the rule cited above allowing recovery on an implied contract where the express contract pleaded never came into existence. In addition, it is clear that defendant's surreptitious procuring of a new lease and his subsequent repudiation of the obligations he had freely assumed in the "Selling Agreement" worked a substantial injustice on plaintiff. Therefore, we find this to be a proper case to invoke the second exception noted above to

the no-recovery rule. The record here shows an unusual and equitable reason for such recovery and the particular situation seems to justify it.

Several peripheral matters are also raised in plaintiff's brief. None of these matters has any significant effect on the merits of the appeal. We discuss them only in the interest of completeness and to demonstrate that none of plaintiff's contentions has been overlooked.

Plaintiff contends that the District Court erred by invoking the parol evidence rule to prevent him from testifying that goodwill was contemplated in the "Selling Agreement" yet still allowing plaintiff to testify on that issue. The record shows that defendant testified only as to what his understanding was of items not included in the agreement, and did not seek to establish that the agreement contemplated more or different items than appeared on its face. There was, therefore, no conflict with the parol evidence rule.

Plaintiff further contends that his offered testimony that goodwill was included in the sale should have been admitted as an exception to the parol evidence rule under section 87A-2-202 R.C.M. 1947, now section 30-2-202 MCA. This section is a provision of the Uniform Commercial Code which is applicable only to sales of "goods" and affords plaintiff no relief upon the sale of a business.

Plaintiff also contends that he was entitled to compensation for the value of his leasehold interest. Unlike goodwill, no authority has been cited or found that such an interest can pass by implication although not mentioned in the "Selling Agreement." Further, at the time defendant entered the new lease, plaintiff's lease had expired and he held the premises only under an informal month-to-month tenancy; he had no transferable interest in any lease. Finally, since the new lease negotiated by defendant

required him to pay $55 per month more rent than plaintiff was paying, it cannot be argued that defendant succeeded to any benefits or advantages of plaintiff's leasehold.

The judgment of the District Court that plaintiff recover nothing on his complaint is vacated and the cause is remanded for a determination of the reasonable value of the goodwill associated with the shop location.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices